Booth, J.,
delivered the opinion of the court:
This case arises under a jurisdictional act approved February 7, 1907 (34 Stat. L., 2408), as follows:
AN ACT For the relief of Esther Rousseau.
“Re it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That *7 jurisdiction be, and hereby is, conferred upon the Court of Claims to bear, determine, and render final judgment upon the claim of Esther Rousseau for horses belonging to her and killed and destroyed upon the Cheyenne River Indian Reservation, or elsewhere, in the State of South Dakota, by the Indian agent in charge of said Cheyenne River Indian Reservation and other persons under his authority, with right of appeal as in other cases.
“ That a petition may be filed by the attorneys of the said Esther Rousseau in said court within forty days from the approval of this act, and service of said petition shall be had by filing copies thereof with the Attorney-General and the Secretary of the Interior, and answer thereto shall be filed in said court within sixty days after the service of the 23etition.
“The court may receive and consider all papers, depositions, records, correspondence, and documents heretofore filed in the executive departments of the Government, together with any other evidence offered, and shall render a judgment or decree thereon for such amount, if any, without interest, if any, as the court shall find legally or equitably due the said Esther Rousseau.
“ Said cause shall be advanced on the calendar of said court, and the amount for which judgment may be rendered, when paid to the party named in said judgment or her duly authorized and accredited attorneys, shall be received in full and final settlement of the claim for said unlawful destruction of said horses.”
The findings show that the claimant herein is an Indian woman residing on the Cheyenne River Indian Reservation engaged in the occupation of breeding and raising horses, and at the time of the injuries complained of was the owner and in possession of a considerable number of well-bred horses ranged upon the aforesaid Indian reservation. Some time in March, 1897, and prior thereto, the United States Indian agent in charge of said reservation reported to the Commis'-sioner of Indian Affairs that the disease of glanders existed among the horses on said reservation, and asked permission from said department to take the necessary steps to eradicate it. In pursuance of said report the Department of the Interior, on April 9, 1897, issued to said agent full power and authority to employ a competent veterinary to inspect all horses ranged upon said reservation and destroy in the most humane manner all animals afflicted with the said disease. *8 Acting upon the authority of the Department of the Interior the Indian agent did employ one Dr. J. W. Elliott, a veterinary surgeon of the State of South Dakota, for the purpose of making said inspection and executing said orders. The record discloses that Doctor Elliott, in company with the necessary assistance from head farmers, range riders, and others, proceeded to his task. Three or four inspections of the claimant’s horses, made at different points on the reservation, convinced Doctor Elliott that the disease of glanders pervaded the claimant’s herd of horses, and after killing several hundred he issued a sweeping order, certainly as comprehensive as it was remarkable, calling for the extermination of her entire brand. This most remarkable order, calling for an indiscriminate slaughter of all of claimant’s property, was in process of execution when suddenly halted bjr orders from the Department of the Interior. Subsequent events proved unmistakably the wisdom of the order from the Department of the Interior. The claimant, through her attorneys, protested against the proceedings of Elliott and commenced suit in the local court to stay the slaughter of her horses. At the request of the claimant and in view of the report of Doctor Elliott the Department of the Interior, in conjunction with the Agriculture and War departments, detailed two competent and experienced veterinaries, Dr. Robert H. Treacy, an inspector in charge of the Bureau of Animal Industry of the United States having charge of the States of North and South Dakota and Montana, and Doctor Corcoran, veterinary in -the Eight Cavalry, then stationed at Fort Yates, N. Dak., to inspect claimant’s horses and report their condition as respects the existence of glanders among the herd. The report of Doctors Treacy and Corcoran, confirmed by the report of Doctor Dalton and every other reputable witness in the record, discloses that the inspection, diagnosis, and order of Doctor Elliott were erroneous. These three veterinarians, after a most thorough diagnosis, made in the most modem and scientific way upon claimant’s horses, pronounced them free from glanders. In fact, four or five animals condemned to death by Doctor Elliott, each of whom escaped their executioners after being seriously *9 wounded, were brought before these veterinarians in a state of recovery from their wounds, and after the most careful examination and inspection were found to be free from disease. Subsequent to the order of suspension of January 22, 1898, few, if any, of the claimant’s horses were slaughtered.
This case under the record before us is.almost wholly one of fact. Just what authority the Department of the Interior had to order the 'destruction of claimant’s property without notice or opportunity to defend, has not been disclosed to the court. While we do not wish to be understood as saying no such authority existed, it has not been shown to the court in this case. No claim is made that the inspection and condemnation was made by order of the Department of Agriculture or in virtue -of the many statutes governing this-department’s stipervision and control of affairs of this character. The jurisdictional act under which we are proceeding-recognizes the existence of the claim, and while it does not create a liability, its language is such as to import a strong intendment that one existed.
The case is one disclosing the importance of great caution in the execution of summary law, and all the facts and circumstances in the record xwesent a transaction wherein the-claimant was greatly wronged and injured.
Judgment is awarded the claimant in the sum of $29,500.
Howry, J., was absent when this case was tried and took no part in the decision.